```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 10-1030(DSD/AJB)
```

Estate of John Stoick,
by Special Administrators
Lisa Spry and Anthony Perra,

       Plaintiffs,

v.                                                    **ORDER**

Cora McCorvey, in her official
capacity as Executive Director
of the Minneapolis Public Housing
Authority (MPHA), and Minneapolis
Public Housing Authority (MPHA),
in and for the City of Minneapolis,
a public body corporate and politic,

       Defendants.

> Dorinda L. Wilder, Lael E. Robertson and Legal Aid Society of Minneapolis, 125 West Broadway Avenue, Suite 105, Minneapolis, MN 55411 and Michael R. Fargione and Mid-Minnesota Legal Assistance, 430 First Avenue North, Suite 300, Minneapolis, MN 55401, counsel for plaintiff.
>
> Carol A. Kubic, Minneapolis Housing Authority, 1001 Washington Avenue North, Room 210, Minneapolis, MN 55401, counsel for defendants.

       This matter is before the court upon cross-motions for summary judgment by plaintiff, the estate of John Stoick, by and through Special Administrators Lisa Spry and Anthony Perra[1] (the Estate)

---

[1] Stoick died in April 2011, while the instant motions were under advisement. See Fargione Aff. ¶ 2. On July 5, 2011, a Minnesota state-court judge appointed Lisa Spry and Anthony Perra, Stoick's half-siblings, as special administrators of Stoick's estate. See ECF No. 37-2. On July 12, 2011, Stoick's counsel moved to substitute plaintiff and amend the caption pursuant to Federal Rule of Civil Procedure 25. The court granted the motion.

and defendants Minneapolis Public Housing Authority (MPHA) and Cora McCorvey in her official capacity as Executive Director of MPHA. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants defendants' motion.

## BACKGROUND

This public housing dispute arises out of Stoick's December 26, 2008, application to live in a high-rise unit owned by MPHA. See Wider Decl. Ex. 2.  On July 8, 2009, MPHA denied the application because (1) Stoick indicated that he had been arrested for, found guilty of, or pleaded guilty to certain offenses; (2) MPHA identified "twenty incidents" of arrest, criminal charges, guilty pleas, or convictions that Stoick failed to disclose on his application; (3) Stoick was "on probation for Indecent Exposure/Lewdness or Procure Another to Expose in Presence of Minor Under 16 (offense date 6/25/2005) until 9/12/2009"; (4) Stoick has "a pattern of criminal behavior"; (5) Stoick did not identify the use of three alias names; and (6) Stoick did not provide accurate information about his criminal history.[2] Id. Ex. AA.  The letter informed Stoick of his "right to request an Informal Hearing" within 10 days, and stated "[i]f you have a disability, you may request a reasonable accommodation to assist you in the admission

---

[2] Stoick did not contest the accuracy of the criminal records, see Boler Aff. ¶ 20, and the Estate does not argue that the criminal records are inaccurate.

2

process or to meet the eligibility requirements for admission ....
With or without reasonable accommodation, you are required to meet
the essential eligibility requirements for admission."  <u>Id.</u>

On September 1, 2009, Stoick requested that MPHA waive his criminal history.  <u>Id.</u> Ex. A.  Stoick claimed that his criminal history was a "direct result of many years of untreated depression, manifesting itself in substance dependence and related difficulties."  <u>Id.</u>  Stoick claimed that he "cannot enjoy the benefits of public housing because of MPHA's policy of rejecting applicants based on criminal history" and that his "criminal history is predicated on his disabilities and does not even suggest that [he] presents a threat or danger to the public housing community."  <u>Id.</u>  Stoick submitted a report from Dr. James Bunde, Ph.D., in support of his request for an accommodation.

On September 24, 2009, MPHA again denied admission for the same reasons cited in the July 8, 2009, letter, including that Stoick (1) indicated that he was arrested for, convicted of, or pleaded guilty to 22 crimes from 1985 to 2007, including Fifth-Degree Assault, Indecent Exposure and Disorderly Conduct, and (2) failed to disclose nine criminal incidents from 1985 to 2009, including Fifth-Degree Assault, Possession of Burglary Tools, and Felony Burglary.  <u>See</u> <u>id.</u> Ex. 1.

MPHA agreed that Stoick's depression was a disability but did "not agree that alcoholism is a disability."  <u>Id.</u> at 6.  Even if it

3

did agree that alcoholism was a disability, MPHA stated that it "would deny [the] request because [Stoick had] not demonstrated any connection between the crimes ... [and] alcoholism or depression." Id. at 5. MPHA denied the reasonable accommodation request for several additional reasons, including: (1) "the accommodation would pose a direct threat to others' health and safety" due to Stoick's "history of arrests for indecent exposure, assault, burglary, trespassing and disorderly conduct"; (2) Stoick "cannot meet the essential eligibility requirements" including "no criminal history and honesty in providing information"; (3) the request was not a request for reasonable accommodation and was based upon Stoick's "personal preference"; and (4) lack of documentation that Stoick was experiencing depression and alcohol dependence on the dates of his criminal incidents. See id. at 6.

Stoick appealed, and a three-member panel held a hearing on February 4, 2010. At the hearing, Stoick testified that he had been through unsuccessful substance-abuse treatment more than twenty times since 1975, but that he was then sober. Kubic Aff. Ex. 2, at 28, 49. Stoick admitted that he was arrested in February 2009 for loitering with an open bottle, but believed that he could maintain his sobriety. Id. at 52-53. Stoick stated that when he "is under the influence of drugs [his] brain tends to cross circuit" and his "whole personality changes." Id. at 19. Stoick further stated that "it's unreasonable to expect anyone who has

used ... as much as [he has] to maintain perfect sobriety." Id. at 42. The panel upheld the denial of admission and the accommodation request because "Stoick has relapsed under doctors [sic] care showing that his history does not demonstrate capability of compliance with the terms of the lease. Does not pass screening – Gross misdemeanor – 2 years after sentencing is complete, will be eligible Aug. 26, 2010." Wider Decl. Ex. X. Stoick had 60 days to appeal the panel decision, but did not do so.

On March 30, 2010, Stoick filed the instant action, alleging that MPHA discriminated against him on the basis of disability and failed to provide reasonable accommodation in violation of the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3604(f); the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.09 subdiv. 1(1). Thereafter, MPHA reconsidered Stoick's eligibility and Stoick executed a lease for MPHA housing effective October 1, 2010.[3] In December 2010, both parties moved for summary judgment.[4] The court heard oral argument

---

[3] On December 3, 2010, the Estate voluntarily dismissed all claims except those stated in paragraphs 114, 120-27, 130-38, and 142(g) and all relief except that sought in paragraphs 2(b)-(e) and 6-10. See Pl.'s Reply Mem. 2; ECF No. 15.

[4] The Estate's motion is styled as a motion for partial summary judgment. The Estate states that it moves for summary judgment "on the issue of the treatment of alcoholism as a disability for the purposes of reasonable accommodation in public housing"; that the parties "can resolve voluntarily or through
(continued...)

5

and took the matter under advisement on January 21, 2011. The court now considers the motions.

## I. Survival of Claims

The court first considers whether Stoick's causes of action and requests for relief survive his death. Stoick asserted federal and state-law claims and seeks money damages and declaratory relief.

### A. Money Damages

#### 1. Federal Claims

"[W]hether a cause of action based on federal law survives the plaintiff's death is a question of federal law." Kettner v. Compass Grp. USA, Inc., 570 F. Supp. 2d 1121, 1126 (D. Minn. 2008) (citing Carlson v. Green, 446 U.S. 14, 23 (1980)). "There is no general survival statute for federal-question cases." 7C Charles Alan Wright et al., Federal Practice and Procedure § 1954 (3d ed. 2007). "With respect to civil rights actions, 'the question whether a civil rights action survives the death of the plaintiff or defendant seldom is resolved explicitly by Congress,' as 'virtually none of the civil rights acts makes any express

---

[4](...continued)
mediation any remaining issues related to the practical administration of the correct policy"; and that "damages and attorneys' fees will remain." Pl.'s Mem. Supp. 3. This statement fails to adequately "identif[y] each claim or defense – or the part of each claim or defense – on which summary judgment is sought," Fed. R. Civ. P. 56(a). The court construes this statement to indicate that the Estate moves for summary judgment on liability for all claims not voluntarily dismissed.

provision for survival.'" Kettner, 570 F. Supp. 2d at 1126 (quoting 2 Joseph G. Cook & John L. Sobieski, Jr. Civil Rights Actions ¶ 4.05, at 4-80).

In the absence of a survival statute "the court must look to federal common law." Id. (citing 7C Federal Practice and Procedure § 1954). Under federal common law, "only actions for penalties or forfeitures do not survive." Id. at 1133 (citation omitted). The ADA and Rehabilitation Act are "remedial in nature" and, accordingly, a plaintiff is entitled to "all available remedies under the ADA and Rehabilitation Act except for liquidated or punitive damages." Id. at 1134. A claim for compensatory damages under the FHAA also survives the death of the plaintiff. See, e.g., United States v. Matusoff Rental Co., 494 F. Supp. 2d 740, 747 (S.D. Ohio 2007); Ambruster v. Monument 3: Realty Fund VIII Ltd., 963 F. Supp. 862, 864-65 (N.D. Cal. 1997); Housing Discrimination Law & Litigation § 12:1 (2011). Therefore the claims for money damages under the ADA, the Rehabilitation Act and the FHAA survive.

### 2. State Law Claim

Under Minnesota law, "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02." Minn. Stat. § 573.01.

> When injury is caused to a person by the
> wrongful act or omission of any person or

7

>      corporation and the person thereafter dies
>      from a cause unrelated to those injuries, the
>      trustee ... may maintain an action for special
>      damages arising out of such injury if the
>      decedent might have maintained an action
>      therefore had the decedent lived.

Minn. Stat. § 573.02 subdiv. 2. "Special damages are those damages to which an exact dollar amount can be assigned, such as medical expenses or lost wages to date of death." Kettner, 570 F. Supp. 2d at 1125 (citing Deal v. Northwood Children's Home Soc'y, 608 N.W.2d 922, 925 n.1 (Minn. Ct. App. 2000)). Damages to compensate the Estate for rent paid as a result of denial of public housing can be assigned an exact dollar amount and, therefore, constitute special damages. As a result, the claim for money damages under the MHRA survives.

**B.  Declaratory Relief**

A federal court has no power to render advisory opinions or to decide questions that cannot affect the rights of litigants in the case before them. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975). Instead the court's "judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a*

*declaratory judgment.*" Id. at 402 (citation omitted); see also Butler v. Dowd, 979 F.2d 661, 673 (8th Cir. 1992) (declaratory judgment requires "actual ... [and] substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality") (citation and internal quotation marks omitted).

The instant case does not meet this standard. A declaratory judgment, if rendered, would have no direct or indirect effect on the Estate, and the Estate can obtain no immediate or future relief based on the declaratory judgment. As a result, a declaratory judgment would necessarily be based upon a hypothetical set of facts, speculating about future plaintiffs or others similarly-situated. Stoick filed this action as an individual plaintiff. Cf. Park View Heights Corp. v. City of Black Jack, 605 F.2d 1033, 1036 (8th Cir. 1979) (in class action under FHAA, court has power "to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future"). Where, as here, declaratory relief will not "clarify any legal relationship" between the parties, the "issue [is] moot." Butler, 979 F.2d at 673. As a result, the claim for declaratory relief is moot and summary judgment is warranted on this claim.

**II.   Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**III. Discrimination Claims**

The FHAA, the Rehabilitation Act, the ADA and the MHRA prohibit disability discrimination in housing. <u>See</u> 42 U.S.C. § 3604(f)(1) (unlawful to discriminate in rental of units "or to otherwise make unavailable or deny, a dwelling," to renter because of renter's "handicap"); 29 U.S.C. § 794 (prohibiting disability

discrimination in program receiving federal financial assistance, including housing programs); 42 U.S.C. §§ 12131-12133 (prohibiting discrimination in all public housing, even if no federal financial assistance); Minn. Stat. § 363A.09 subdiv. 1(1) (prohibiting disability discrimination in rent or lease of real property). The parties agree that Stoick was disabled. See Wider Decl. Ex. 1, at 6 (MPHA agrees that Stoick's "diagnosis of depression is a disability").[5] The parties dispute whether Stoick was eligible for public housing when he applied in December 2008 and whether he was entitled to the accommodation that he requested.[6]

### A. Eligibility

In order for a public housing authority (PHA) to make an offer of housing, an applicant must meet mandatory eligibility criteria and applicant-selection criteria for admission. See 24 C.F.R. §§ 960.201 (a), 960.203 (a)(b)(c)(d);[7] see also U.S. Dep't of Housing & Urban Dev. et al., Public Housing Occupancy Guidebook 47

---

[5] The FHAA, Rehabilitation Act, the ADA and their implementing regulations "define an individual or person with disability in virtually the same language." U.S. Dep't of Housing & Urban Dev. et al., Public Housing Occupancy Guidebook 15 (June 2003). Moreover, "the ADA and the MHRA are construed the same." Loye v. Cnty. of Dakota, 625 F.3d 494, 497 n.2 (8th Cir. 2010).

[6] The parties also dispute whether alcoholism is a disability for purposes of admission to public housing. The court declines to consider this issue, however, because its resolution is immaterial to resolving the instant dispute.

[7] Both parties cite federal regulations in support of their respective motions, and neither party challenges the validity of the regulations or that they apply to the instant dispute.

(June 2003) [hereinafter Guidebook].⁸  If an applicant meets the mandatory eligibility criteria, the PHA then considers discretionary factors to determine the applicant's probable lease compliance.  See 24 C.F.R. § 960.203 (a)(b)(c)(d); see also Wider Decl. Ex. U ("Being eligible ... is not entitlement to housing.  In addition, every applicant must meet MPHA's Tenant Selection Criteria.").

    **1.  Eligibility Review**

"An applicant must meet all eligibility requirements in order to receive housing assistance."  24 C.F.R. § 960.201.  The Estate claims that Stoick satisfied all mandatory eligibility criteria. MPHA's denial letter stated that Stoick "cannot meet the essential eligibility requirements of the program which include no criminal activity and honesty in providing information."  Wider Decl. Ex. 1, at 6.  MPHA "can reject [an] application if, during the course of processing, it is proven that an applicant has ... misrepresented any facts about his/her current situation, history, or behavior in a manner that would affect eligibility, preferences [or] applicant selection criteria qualification."  Guidebook 55.  Under its "requirements for admission," however, the MPHA requires only that an applicant: (1) qualify as a "family," (2) not exceed a maximum

---

⁸ The Estate submitted excerpts of the Guidebook as an exhibit in support of its motion.  See Wider Decl. Ex. MM.  "Th[e] Guide is designed to assist public housing authority staff and HUD with a range of issues related to public housing occupancy."  Guidebook 1.

annual income, (3) provide a social security card for each applicant over six years old, and (4) be a United States citizen or eligible noncitizen.  See Wider Decl. Ex. U.  Therefore, for the purposes of this motion, the court determines that Stoick satisfied the minimum eligibility requirements.

### 2. Applicant Selection Criteria

"The second stage of processing is applying the screening criteria."  Guidebook 59.  The federal regulations give PHAs broad authority to deny admission and terminate tenancy for criminal activity or alcohol abuse.  See 24 C.F.R. § 5.851.  In Part 5 (General HUD Program Requirements; Waivers), Subpart I (Preventing Crime in Federally Assisted Housing – Denying Admission and Terminating Tenancy for Criminal Activity or Alcohol Abuse), the regulations direct PHAs: "You *must* establish standards that prohibit admission to federally assisted housing if you determine you have reasonable cause to believe that a household member's abuse or pattern of abuse of alcohol interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents."  24 C.F.R. § 5.857 (emphasis added).

This directive is repeated throughout the regulations.

> In selection of families for admission to its public housing program ... the PHA is responsible for screening family behavior and suitability for tenancy.  The PHA may consider all relevant information, which may include, but is not limited to ...

13

> A history of criminal activity involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants.

Id. § 960.203.

> The PHA *must* establish standards that *prohibit admission* to the PHA's public housing program if the PHA determines that it has reasonable cause to believe that a household member's abuse or pattern of abuse of alcohol may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents."

Id. § 960.204(b) (emphasis added).

MPHA's criteria for excluding Stoick fell well within federal regulations. Stoick's substantial and prolonged criminal history included fifth-degree assault and burglary, and a 2005 arrest for Indecent Exposure/Lewdness or Procure Another to Expose in Presence of Minor Under 16. As a result, MPHA had reasonable cause to believe that Stoick's "history of criminal activity involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants." Id. § 960.203. Therefore, Stoick could not meet the applicant-selection criteria.

If an applicant with a disability cannot meet one or more of the screening criteria, the applicant may request a reasonable accommodation. See Guidebook 59. Stoick requested that MPHA waive his criminal history, and argues that MPHA's refusal was unlawful.

### B.      Reasonable Accommodation

The court considers claims for failure to accommodate using "a modified burden-shifting analysis, because discriminatory intent is not at issue." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006). To prevail on its claims under the FHAA, Rehabilitation Act, ADA and MHRA, the Estate must show "that the accommodation [Stoick] requested ... was reasonable." Huberty v. Wash. Cnty. Hous. & Redevelopment Auth., 374 F. Supp. 2d 768, 773 (D. Minn. 2005) (citing Peebles v. Potter, 354 F.3d 761, 766 n.4, 767-78 (8th Cir. 2004) (ADA and Rehabilitation Act); Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003) (MHRA); Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002) (FHAA)). If the Estate makes a prima face showing, the burden shifts to MPHA to demonstrate that the requested accommodation creates an undue hardship under the particular circumstances. See Peebles, 354 F.3d at 768 (citing U.S. Airways v. Barnett, 535 U.S. 391, 402 (2002)).

Whether an accommodation is reasonable is "'highly fact-specific, requiring a case-by-case determination.'" Lapid-Laurel, 284 F.3d at 462 (citation and internal quotation marks omitted). "The court should first examine the accommodation request to determine precisely what plaintiff was asking for under all the circumstances." Huberty, 374 F. Supp. 2d at 774. A requested accommodation that fundamentally alters the nature of the

15

program is not reasonable.  See Mershon, 442 F.3d at 1076; see also Peebles, 354 F.3d at 769; Lapid-Laurel, 284 F.3d at 462.

In the present action, Stoick requested that MPHA "disregard his criminal history" because he had "undergone and continues to undergo successful and effective treatment for his disabilities" and his criminal history "does not even suggest that [he] presents a threat or danger to the public housing community."  Wider Decl. Ex. A, at 2.[9]  The record contradicts these conclusory statements. At his appeal hearing Stoick admitted that he had been arrested for loitering with an open bottle despite ongoing treatment.  Kubic Aff. Ex. 2, at 53.  He also admitted that he had relapsed "many times," even with treatment and asserted that it was unreasonable to expect that he would not relapse.  Id. at 52.  Stoick further stated: "the only treatment I'm getting right now is from myself." Id. at 53. By Stoick's own admission, his personality changes when he is under the influence of alcohol, id. at 19, and is therefore more likely to commit crimes while using.  Stoick's criminal history includes assault, burglary and other violent crimes.  As a result Stoick's accommodation request fundamentally alters the

---

[9] The Estate now claims that Stoick requested only that MPHA waive two offenses committed in 2005 and 2009. See Pl.'s Reply Mem. 27. This assertion is belied by the Estate's own exhibits, which indicate that Stoick asked MPHA for a blanket exclusion of his criminal history. See, e.g., Wider Decl. Ex. A, at 1. Moreover, within the context of his long criminal history, the recent offenses are relevant to determine whether Stoick's pattern of crime and alcohol abuse presented a threat to the health and safety of other residents. See 24 C.F.R. §§ 960.203-.204.

nature of the program by requiring MPHA to disregard federal regulations requiring that it protect the health and safety of its tenants and screen out applicants who pose a threat.  In short, no reasonable juror could find that Stoick's accommodation request was reasonable.  As a result, the Estate fails to show that the requested accommodation was facially reasonable, and summary judgment is warranted.[10]

Moreover, even if the requested accommodation were reasonable, the Estate fails to show that the accommodation would have enabled Stoick to meet the requirements of the lease.  See Guidebook 58 ("If, even with reasonable accommodation, applicants with disabilities cannot meet essential lease requirements, it is permissible to reject them.").  The record shows that Stoick continued to commit crimes even while receiving treatment for alcoholism.  See Wider Aff. Ex. X, at 3.  As a result, even if MPHA

---

[10] The Estate cites several inapposite cases in support of its argument that waiver of criminal history is reasonable.  None of these cases involved an applicant with a long criminal history seeking admission to housing, and none stand for the proposition that waiving criminal history is a reasonable accommodation.  See Boston Housing Auth. v. Bridgewaters, 898 N.E.2d 848, 850 (D. Mass. 2009) (before evicting mentally disabled public housing tenant for assaulting another, PHA must consider whether requested reasonable accommodation related to disability); Roe v. Sugar River Mills Assocs., 820 F. Supp. 636, 640 (D.N.H. 1993) (denying landlord's motion for summary judgment where landlord evicted tenant after tenant's disability-related outburst); Cornwell & Taylor LLP v. Moore, No. C8-00-1000, 2000 WL 1887528, at *6 (Minn. Ct. App. Dec. 22, 2000) (remand to determine whether evicted tenant's reasonable accommodation request imposed undue hardship or required fundamental change).

waived Stoick's criminal history, Stoick failed to demonstrate that he could comply with the lease requirement that he refrain from future criminal activity that threatens the health and safety of other tenants.  Therefore, for this additional reason, the claims fail.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for summary judgment by defendants MPHA and Cora McCorvey [ECF No. 26] is granted; and

2.   The motion for partial summary judgment by the estate of John Stoick, by and through Special Administrators Lisa Spry and Anthony Perra, [ECF No. 17] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  July 29, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
